Filed 12/5/25  P. v. Lovett CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>RAZI WAIN LOVETT, SR.,<br><br>　　　　Defendant and Appellant. | C102312<br><br>(Super. Ct. No. 24F03214) |

Appointed counsel for defendant Razi Wain Lovett, Sr. asked this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  We will affirm.

1

# FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1); count 1),[1] three counts of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); counts 2-4), and felony vandalism (§ 594, subd. (b)(1); count 5). It was further alleged defendant had a prior strike. (§§ 667, subds. (b)-(i), 1170.12.) Three aggravating circumstances were also alleged. (Cal. Rules of Court, rule 4.421.)

The matter proceeded to trial, where J.W. testified he was a student at the local community college on November 23, 2023. He lived in a room in a dorm that housed around 150 people. B.R., U.S., and defendant's son Talib also lived in the dorm; Talib and U.S. were roommates.

Someone brought a speaker, worth $30, to J.W.'s room before Thanksgiving. J.W. thought the speaker belonged to U.S., but it actually belonged to Talib. Before leaving for a dinner, J.W. gave the speaker to B.R. and asked B.R. to let U.S. know where the speaker was. While J.W. was gone, he received texts from U.S. stating Talib was upset about the speaker and wanted to fight. J.W. returned to the dorm and found U.S. and T.L.'s room "destroyed." There were broken chairs, and the furniture was "disarrayed." J.W. tried to talk to Talib, but Talib refused. J.W. returned to his room, which was on a floor above U.S. and T.L.'s room.

About an hour later, J.W. heard banging, voices "yelling for me," and footsteps coming up the stairs. J.W. opened the door, stepped out into the hall, closed the door behind him, and saw Talib and three other people he had never seen before. Talib was in the front, followed by his brother "Junior," who was holding a metal bat, and a third person who had a knife. Talib started punching J.W. in the face and body; Junior used

---

[1] Undesignated statutory references are to the Penal Code.

the bat to hit J.W. on his back, the back of his head, and his left hand.  J.W., who was knocked to the ground, tried to cover himself as the men continued hitting him.  Talib told J.W. to " 'Stay down.' "  One of the other attackers said " 'Shoot this guy.' "  J.W. had not seen a gun, but he was scared.  Someone said that campus security was coming, and the attackers fled.

J.W. suffered bruises and a bloody nose.  He later told police officers that one of his attackers was older and wore a white T-shirt.  J.W. was unsure if this attacker was armed.  Out of the presence of the jury, J.W. reviewed a video recording of the attack, which showed the attacker was wearing a white T-shirt.  J.W. did not see anyone in the courtroom who looked like the attacker.

V.T. testified that he lived in the same dorm as J.W.  The night of the assault, V.T. was in his room drinking and playing video games with I.F., U.S., and B.R.  He suddenly heard loud, long honks and a glass smashing.  V.T. told his friend to shut the room door, but Talib and three others who looked older than Talib "barg[ed]" their way in.  V.T. heard Talib, who was unarmed, telling the others what to do.  One of the four used a metal bat to smash a cup and then turned toward V.T.  Instead of hitting V.T., he hit I.F. The attacker then switched attention to B.R. and hit him; B.R. caught the bat and pushed off the attacker.  Another person started trying to hit U.S.  When U.S. pushed back, the attacker pulled a knife and "slice[d] him" in the arm.  One of the attackers flashed a gun. The attackers then left.  As they left, V.T. heard them threaten to shoot and kill V.T. and his friends.  A video was played for the jury showing the attack, which V.T. estimated lasted about a minute.

Detective Mike Enyart testified that he watched surveillance video of the incident that showed four men, including Talib, Junior, and defendant.  The video showed Junior holding a bat and defendant wearing a white T-shirt and holding what appeared to be a knife in his right hand.  Detective Enyart was unable to identify the fourth person.

3

U.S., who appeared intoxicated and stressed, told responding officers that he and some friends had been drinking alcohol in a dorm room. Through an open door, they saw someone using a baseball bat to break an exterior window. A group then entered the room and began assaulting U.S. and his friends. Officers saw bruising on U.S.'s elbow and eye area.

Another responding officer noticed scratches on J.W.'s forehead, drying blood on his lips, a bruise on his neck, and abrasions on his left hand. Another saw a red mark about four inches by six inches on B.R.'s stomach.

I.F., who appeared distraught, told responding officers that four people came into the room; one of the four jabbed I.F. twice with a bat and then hit him in the arms with the bat. Officers noticed I.F.'s hand was swollen and his forearm "appeared to be caved in a little bit." The jury was shown photographs of I.F.'s injuries.

A campus safety sergeant testified that a window in an entry door was shattered. The college had to repair the window.

Junior subsequently pled no contest to assault with a deadly weapon and assault by means of force likely to produce great bodily injury. Defendant did not object to the prosecution's request to admit a copy of the information and plea form, and the trial court admitted the documents. The court later instructed the jury that Junior's plea "alone may not establish Defendant's guilt." In addition, the jury was only to consider the evidence of the plea "for the limited purpose that another person committed a crime."

Defendant testified that, the night of the incident, he had been at Thanksgiving dinner with his family. Talib, his girlfriend, and his girlfriend's parents left at the end of the dinner. Talib's girlfriend and her parents soon returned, warning defendant that Talib's life was in danger. Defendant and his wife, together with Junior, Talib's girlfriend, and her parents went to the college. Fearing for Talib's safety, Junior brought a baseball bat.

4

Defendant tried to get the attention of a campus security officer. The officer did not respond, so defendant and his wife went with Junior to the dorm to look for Talib; they found a group of students from another college "wrapping weapons in T-shirts" and "putting them in the trunks of their cars."

Defendant and Junior went to the dorm's front door, where Junior banged on the glass so hard that it broke. Talib opened the door and said, "they were hiding." The group began trying to retrieve Talib's belongings from the dorm. Defendant thought Talib's birth certificate and social security card were in U.S.'s room, so they headed there. They never went inside U.S.'s room, and defendant did not assault anyone. The group next went to Talib's room. Inside the room, defendant found "[a]ll of our property destroyed," including a refrigerator, a television, and a video game system. The group then headed upstairs toward J.W.'s room. When they got there, J.W. was on the ground, and there were four men surrounding J.W. with bats. Defendant thought they were students from a different college. The four stopped beating J.W. when defendant arrived.

Defendant acknowledged he had a knife that evening. He was disabled and needed the knife for protection. He denied brandishing his knife or carrying a gun that evening. He also denied assaulting J.W., U.S., I.F., or B.R. that evening, and said he never instructed his sons to assault anyone.

After the close of evidence, the trial court reduced the vandalism charge to a misdemeanor and in August 2024, the jury found defendant guilty of all charges. In bifurcated proceedings, the trial court found true the prior strike allegation and two of the three alleged aggravating circumstances. (Cal. Rules of Court, rule 4.421.)

During the October 2024 sentencing hearing, the trial court dismissed the prior strike allegation per *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. The court sentenced defendant to seven years in prison: the upper term of four years for the assault with a deadly weapon count; one year consecutive for each of the three counts of assault by means of force likely to produce great bodily injury; and 364 days concurrent

5

for the misdemeanor vandalism count.  The court suspended execution of sentence and placed defendant on three years of probation.  The probation conditions included a 180-day jail term with nine days of custody credit.  The court also imposed various fees and fines.

Defendant timely appealed.

## DISCUSSION

Counsel filed an opening brief setting forth the facts of the case and asking this court to review the record and determine whether there are any arguable issues on appeal. (*People v. Wende*, *supra*, 25 Cal.3d 436.)  Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing the opening brief.  More than 30 days have elapsed, and we have received no communication from defendant. Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

## DISPOSITION

The judgment is affirmed.

/s/  
Duarte, J.

We concur:


/s/  
Mauro, Acting P. J.


/s/  
Wiseman, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.